FILED
IN CLERKS OFFICE

2004 JUN -8  A 10: 51

U.S. DISTRICT COURT
DISTRICT OF MASS.

# AFFIDAVIT OF CHRISTINE M. GRIFFIN

Christine M. Griffin, being duly sworn, deposes and says:

1. My name is Christine M. Griffin. I have been employed as the Executive Director of the Disability Law Center, Inc. since September, 1996. I am a licensed attorney, having been admitted into the Massachusetts Bar in 1993 and the Federal District Court Bar in 1994.

2. The Disability Law Center, Inc., is a private non-profit Massachusetts corporation mandated by Congress and designated by the Governor of the Commonwealth of Massachusetts to provide Protection and Advocacy (P&A) services to individuals with developmental disabilities, pursuant to 42 U.S.C. § 15001 et seq.

3. I participate in weekly case review meetings with all of the legal staff at DLC where we review potential new cases, discuss significant ongoing case investigations and make decisions on which cases to accept for legal representation. Consistent with our mandate as a P&A, investigations of allegations of abuse and neglect are one of our highest priorities. I recall that we made a decision to initiate a preliminary review of allegations of abuse and neglect at the Kennedy Donovan Center School (KDCS) in one of our meetings, and then to initiate a full investigation, including legal representation, at a later meeting. Based on the preliminary information that we had received from one former parent, we had concerns about past and possibly present practices at the school

4. In addition, I have participated in several meetings dedicated exclusively to discussions about DLC's investigation of alleged abuse and neglect by staff against students at KDCS. Staff Attorney Janine A. Solomon spent approximately twelve hours conducting in-person interviews with five former KDCS staff members. The interviews were all preserved on audio-tape and then transcribed by DLC support staff, before being reviewed by Matthew Engel, Senior Attorney and Education Team Leader, and Stanley J. Eichner, DLC's Director of Litigation, who have been overseeing this investigation. I am familiar with the general content of the interviews of former KDCS staff conducted by Attorney Solomon, and have reviewed the sworn statements of Bernice Forcier, Venilde Cabral and Patricia Campbell. I have also consulted frequently with Attorneys Engel and Eichner. From our discussions, it is clear to me that there are serious and credible allegations concerning past instances of abuse and neglect perpetrated by staff against students at KDCS, along with a likelihood that such practices continue to the present day.

5. After reviewing all of the information that our preliminary investigation revealed about the allegations concerning KDCS, I concurred with the opinion of the three other DLC attorneys that it is critically important for DLC to obtain copies of KDCS documents, including

its internal review of the allegations, as well as contact information for guardians for past and current students at KDCS, in order to adequately investigate the allegations of abuse and neglect. Our extensive efforts to obtain such documents and information through direct negotiations with counsel for KDCS have, unfortunately, proved to be unsuccessful. This included an exchange of a total of seven letters between the parties. *Attachment No. 1, Letter dated December 17, 2003 from DLC to KDC; Attachment No. 2, Letter dated December 31, 2003 from KDC to DLC; Attachment No. 3, Letter dated January 8, 2004 from DLC to KDC; Attachment No. 4, Letter dated January 12, 2004 from KDC to DLC; Attachment No. 5, Letter dated February 6, 2004 from DLC to KDC; Attachment No. 6, Letter dated February 19, 2004 from KDC to DLC; and Attachment No. 7, Letter dated February 25, 2004 from DLC to KDC.*

6. As part of its Congressional mandate, DLC is authorized to investigate incidents of abuse and neglect of individuals with disabilities if it receives a complaint, or if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 15043(a)(2)(B).

7. Under the applicable regulations, "abuse" is defined as: "any act or failure to act which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to an individual with developmental disabilities, and includes such acts as: Verbal, nonverbal, mental and emotional harassment; rape or sexual assault; striking; the use of excessive force when placing such an individual in bodily restraints; the use of bodily or chemical restraints which is not in compliance with Federal and State laws and regulations or any other practice which is likely to cause immediate physical or psychological harm or result in long term harm if such practices continue."
45 C.F.R § 1386.19.

8. Under the applicable regulations, "neglect" is defined as: "a negligent act or omission by an individual responsible for providing treatment or habilitation services which caused or may have caused injury of death to an individual with developmental disabilities or which placed an individual with developmental disabilities at risk of injury or death, and includes acts or omissions such as failure to: establish or carry out an appropriate individual program plan or treatment plan (including a treatment plan); provide adequate nutrition, clothing, or health care to an individual with developmental disabilities; provide a safe environment which also includes failure to maintain adequate numbers of trained staff."
45 C.F.R. § 1386.19.

9. Under the applicable regulations, a "complaint" is defined as: "Complaint includes but is not limited to any reports, whether formal or informal, written or oral, received by the system including media accounts, newspaper articles, telephone calls (including anonymous calls), from any source alleging abuse or neglect of an individual with a developmental disability." 45 C.F.R. § 1386.19.

10. Under the applicable regulations, "probable cause" is defined as: "a reasonable ground for belief that an individual with a developmental disabilities has been, or may be, subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents,

conditions or problems that are usually associated with abuse or neglect. 45 C.F.R. § 1386.19. Case law has established that the P&A is the "final arbiter of the probable cause determination." *Arizona Center for Disability Law. v. Allen,* 197 F.R.D. 689 (D. Az. 2000).

11. After conferring extensively with attorneys Solomon, Engel and Eichner, and as part of my duties as Executive Director of DLC, I determined that the probable cause standard cited in paragraph 10 of my Affidavit has been met with respect to the allegations of abuse and neglect at KDCS.

12. Due to KDCS' refusal to provide DLC with the list of guardian contacts and internal KDCS documents which we requested, DLC has been effectively prevented from being able to proceed with our mandated abuse and neglect investigation in this matter.

Signed under pains and penalties of perjury this 26th day of May, 2004.

Christine M. Griffin
Executive Director
Disability Law Center