UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DISABILITY LAW CENTER<br>Plaintiff | )<br>)<br>)<br>)<br>) |  |
| v. | )<br>) | CIVIL ACTION NO. 04-11248 JLT |
| KENNEDY DONOVAN CENTER, INC.<br>Defendant | )<br>)<br>)<br>)<br>) |  |

## AFFIDAVIT OF ANN TAYLOR

Ann Taylor, being duly sworn, hereby deposes and says that the following is true to the best of her knowledge and belief:

1. My name is Ann Taylor. I am the Senior Vice President of the Kennedy Donovan Center, Inc. (hereinafter KDC). I have held that position for seven (7) years, since 1997. Prior to that time, I had held a variety of positions with KDC, including Vice President of Programs from January, 1988 to December, 1996, Early Intervention Program Director from July, 1984 to December, 1987, and Speech-Language Pathologist from March, 1981 to June, 1984. In total, I have been employed by KDC for twenty-three (23) years.

2. KDC is a Chapter 180, §501(c)(3) corporation established to meet the diverse needs of a wide variety of disabled individuals. One of the programs which KDC operates is the Kennedy Donovan Center School (hereinafter the "School"), located in New Bedford, Massachusetts. The School is an approved, private day school which provides special education and related services to children between the ages of 3 and 22 years of age with a variety of disabilities, as described in the attached page from the directory of approved private schools published by Massachusetts Association of Approved Private Schools (hereinafter MAAPS). The School is a member of MAAPS.

3. As an approved, private school, the School is considered an out-of-district placement by the Massachusetts regulations on special education, and can accept, provide education and related services to, consistent with the federal state law (G.L. c.71B and the IDEA), and be a designated placement on an individualized educational plan (IEP) for publicly-funded students referred by local educational agencies (LEAs).

4. The School has held approval from the Massachusetts Department of Education to

provide special education and related services to special needs children for a number of years. In the late 1990's, and into the year 2000, all special education, approved private schools had to refile for approval by the Department of Education, following the Department's issuance of a new, detailed approval process which coincided with the issuance of revised special education regulations by the Massachusetts Department of Education. It is my understanding that the revised Massachusetts special education regulations resulted from revised federal special education regulations.

5. One of the criteria for approval was whether or not the private day or residential program had policies and practices consistent with the Family Education Rights' Privacy Act (hereinafter "FERPA"), the Individuals With Disabilities Education Act (hereinafter "IDEA"), as well as their state counterparts, the Massachusetts Students Records Regulations and M.G.L.c, 71B.

6. Another criterion was the existence of a complaint procedure for parents, in addition to training of staff in such topics as filing of abuse/neglect complaints with the Department of Social Services under G.L. 119, §51A, the physical restraint regulations, and the requirements in effect for student records.

7. On or about July 30, 2003, Patricia Campbell, a teacher at the School, resigned her position, and submitted a letter of resignation which is attached to the Campbell Affidavit. In that letter, she raised a number of concerns about certain staff and their treatment of the students. She gave no notice of her resignation, and simply left her job after submitting the letter of resignation. Prior to her letter of resignation, Ms. Campbell did not bring these allegations to the attention of any supervisor or administrator at KDC.

8. Further, despite being a mandated reporter under G.L. c. 119, §51A, she did not file a complaint with DSS.

9. As a result of that letter from Ms. Campbell, administrators of KDC, including the Vice President of Human Resources, the Vice President of Programs and the Program Director, conducted interviews and did a thorough investigation of the allegations in the letter of resignation. Certain staff members resigned as a result of the investigation, and additional training was provided to staff members at the School.

10. As of the time Ms. Campbell resigned on July 30, 2002, no other employee had filed any complaint concerning the treatment of students at the School. All employees at the School are mandated reporters. No complaint had ben filed with DSS as of July 30, 2002 because DSS would have informed KDC of the complaint. In early September, 2002, an anonymous reporter called in a complaint to DSS; the complaint was screened out by the New Bedford office of DSS, a decision in which the Boston office of DSS concurred.

11. On or about July 31, 2002, a parent, who has been identified by name in the Complaint